310-0760 Advanced Physicians S.C. Appellant Ryan Keeley v. Marjorie Clifton Appellee Charles Pandiano Mr. Keeley May it please the court, Mr. Pandiano My name is Ryan Keeley, I represent the Appellant Advanced Physicians With me today is Robert Hosino, who is a newly licensed attorney to the Bar He has done the research and wrote the briefs on behalf of the Appellant So I'd like to allow him to do the argument for the Appellant, if that is okay with the Bar Fine Thank you very much Good morning, your honors. My name is Robert Hosino, I'm here for the argument for the Appellant Welcome to the Bar, by the way Oh, thank you We're not going to be nice to you just because you're new I understand I understand The only issue presented on appeal this morning is whether or not the trial court erred in not allowing for attorney's fees Now, when we look at Illinois cases on this matter, they're basically two kinds of cases And they look at whether or not the parties agreed, agreement was clear and ambiguous to shifting the cost of attorney's fees And the other line of cases deal with whether or not the language in the contract specifically calls for attorney's fees If it doesn't call for attorney's fees, then usually attorney's fees are not allowed And the Don and Wester case for this district holds that if you use attorney's fees in the contract language, as in this case, then attorney's fees should be allowed A more recent case, Negro Ness, also talks about that it's good judicial policy to set a bright line in these cases and allow attorney's fees when the contract is clear and ambiguous Because it would actually reduce litigation by placing both parties on notice, as this was the case So it's pretty simple The trial court didn't include this kind of reasoning in their analysis and assessment of whether attorney's fees should be allowed So we're not disputing anything that the trial court upheld The amount of money payable for the medical fees is fine, nobody disputes that It's the part about the attorney's fees that we are requesting this court to reverse and revamp to the trial court Let me see if I can muddy the water up for you There's no question that there's reference to an attorney fees provision in the contract But would you agree that we, like any contract provision, we have to look at the language of the contract provision as does the trial court? Yes, sir And in this case, the contract provision says, if I refuse to pay any balance owed, yadda yadda yadda Or if advanced physicians SC has to use an attorney or collection agency to pursue any collection Correct So did the trial court make a finding as to whether or not he thought that the retention of attorney was necessary in this case? Well, the trial court determined that the agreement for the contract for attorney fees was okay And he stated like that But he didn't go into the analysis of the contractual language any further The way he went about his reasoning was that he thought that the lawsuit was caused by the plaintiff And I don't know how he got to that point, he doesn't explain clearly why he felt that way But none of the cases in Illinois that dealt with that, that we read, talked about putting the burden on the court and deciding who caused the lawsuit Well, I think, I've looked at those cases too, and it looks to me, I haven't seen any case where the contract language says if the plaintiff has to use an attorney In other words, I didn't see this specific language in any of those cases we looked at Well, you're right, but this is a standard indemnification type of language What you're actually saying is, if you don't pay our bill, and we have to go after you in a legal matter, you will be responsible for the attorney fees Okay, and that's a reasonable interpretation And you can say that in many ways In this case though, the trial court seemed to draw the conclusion that there was overreaching going on by the physicians Who, that says, if you had demanded the amount you were really owed, this case would have gone away Yes, you're right, that was their opinion, but I do not think the trial court was making the correct assumptions in that case Because we had gone to arbitration, and the arbitration award was around the same, $8,100, same thing as the trial court suggested And it also allowed for $1,800 in attorney fees And instead of offering the arbitration cost, which would have been reasonable, they offered Instead they offered $6,000 and some dollars claiming a doctrine from doctrine, taking extra money for that So, you know, I do not agree with the opinion of the court that it was caused by overreaching The plaintiff was willing to take the arbitration award, instead was offered something that was a lot less And I think that's really what caused the dispute It wasn't about the initial billings or any overreaching in that matter The advanced decisions was willing to take the estimated workers' compensation fee schedule Okay, any questions? Did you write the brief? Yes, I wrote the brief with Brian Keeley Just as a practice recommendation, there are three of us here on one record And when you're focusing on one aspect of the record, the contract, the indemnification provision particularly It would be helpful to the panel if you would include that in the appendix Include the contract itself? Yes It's not required in the Supreme Court rules, but I'm just saying as a practice tip, it would be helpful I will, Your Honor And I think, for example, you've got one document, maybe a short number of pages Include it in the brief Add it as an exemplary appendix, whether it's a photograph I quoted to it on the main document, but you're right, it's cumbersome, it's large Well, like I said, there's three of us with one record, and we all live in different locations I understand I'll follow your advice And by the way, this is a common issue we have with very seasoned appellate lawyers sometimes Right, yeah, I'm just starting out in appellate work, and for everyone in practice Thank you Okay, thank you, Mr. Casino And I reserve the balance of two minutes for rebuttal Yes, sir Mr. Candiano Yes, sir May it please the Court My name is Charles Candiano, and I represent Marjorie Clifton in this matter We represented Marjorie Clifton in a workers' compensation claim below, which gave rise to this litigation Marjorie Clifton was an individual who was hurt at work Injured her, she injured herself in a couple of different ways Was referred to Advanced Physicians and was provided some physical therapy for which she was billed $26,000 When the Illinois Physicians' fee schedules apply to that amount, to those services that were provided, it yields a figure of $8,315.94 Ms. Clifton never disputed that she owed the money Insisted that the money be held in escrow before any distribution was made The money continues to be held in escrow by our office She never said that she wasn't going to pay the money But Advanced Physicians insisted on a sum of $10,976 all along As a matter of fact, it's a red herring for them to... It's simply not true that they agreed to accept anything less than the $10,976 Because even in this trial, I'm sure Your Honors have reviewed the transcript They argued that the Physicians' fee schedule shouldn't even apply So they never did agree to accept a lesser amount As Your Honor pointed out earlier, the contract language has the provision or to the effect of If the Physicians' group has to use an attorney to collect a balance owed Well, Your Honors, we submit that the plain meaning of that phrase Has to use implies a refusal to pay the bill Moreover, there are a number of... In the very document that counsel is seeking to have enforced There are a number of conditions precedent The only condition precedent that counsel has brought to the court's attention Is the condition of making mention that it intends to shift the burden of attorney fees On the individual who received the services if, in fact, litigation is necessary But counsel makes no reference to the other conditions precedent The... Excuse me For example, the very same document that counsel is seeking to enforce Provides that the Physicians' group will file any medical forms with the... I'm sorry, any insurance forms that are necessary for them to collect their fee It's unrebutted that no insurance claim was ever filed with Ms. Clifton's group health insurance carrier It's... They did file a claim with the workers' compensation carrier But once... As I'm sure Your Honors are aware Once they received a denial from the workers' compensation carrier They were certainly within their rights to file a claim with the group health insurance carrier And the group health insurance carrier would have been obligated to pay That was never done Let me ask you this Yes, Your Honor With respect... You mentioned that she insisted the money be held in escrow Yes Why was that? She wanted to make certain that... Whomever provided care to her was paid And that she would not become obligated for this sum at any time in the future Or any sum of time in the future When she may not have the funds to pay the money Well, I mean, if the physician is owed for past services What has that got to do with whether or not she owes... She needs to pay them for the services already rendered Because I... The amount has always been in dispute, Your Honor Was part of that dispute a 20% claim for... Under the fund doctrine Under the common fund doctrine Yes And that... Was that part of the reason money was escrowed? Until that issue was resolved also? It was an issue, Your Honor And that didn't go very far, correct? Beg your pardon? That didn't go very far The judge... The common fund doctrine wouldn't... The trial court found a common fund doctrine Doesn't apply to this situation He... That was a finding, Your Honor He did not address it or explain his ruling any further But he... That was his ruling So the common fund doctrine doesn't apply to this? I would take issue, Your Honor And... I have not... I've represented many hundreds of petitioners In workers' compensation cases And I can honestly tell the court That I have never encountered a single case Where the common fund doctrine was not honored By a service provider? Yes, Your Honor I understand by another insurance... By a segregated insurance company Well, in workers' compensation We don't generally have that situation Well, I did a few work cases in my day And... The... On the other side And... But the... Generally, I think the common fund doctrine applies to Like if the health insurer pays the medical bill And then the health insurer is coming back again You know, and... Segregating them against that work comp settlement The health insurer... You say, well, we created the fund for you all So you didn't have to go get it But as far as against a physician Or an ambulance service Or whoever I've never seen the fund doct... Common fund doctrine applied against... Directly against them Because they've got a contract with your client To pay the bill Unlike a segregating insurance company All I can tell you, Your Honor, is that... That... I understand your reasoning And I understand the... Our Supreme Court's recent ruling in this matter But... As you're probably also aware The... The decision that was available to us At the time this dispute arose from the 5th District Rendered the opinion that... The doctrine should apply To service providers as well And... As I also mentioned in my own experience in my practice We have always applied it And... Never once had a provider... Refused to acknowledge it But that's not an appeal now That's correct, Your Honor And the only reason it's significant Is to the effect of why maybe... Your client didn't actually pony up the... Eight... Eight thousand and change that... That she agreed that she owed That amount was never... Bigger Well... The 8,500 that... That she agreed that was the bill that was owed Correct But then... There was... In your mind, there was a dispute as to whether... You were entitled to 10 percent... Or 20 percent reduction That she was entitled to the reduction Not our firm, Your Honor But... Again... That's true But that notwithstanding... As I mentioned... The... Advanced Physicians... Did sue for the entire... 10,976 dollars And... Specifically argued... To the trial judge... That the physician's fee schedule should not apply So... They should be stopped from... From suggesting to this court... That they ever made an offer to accept... To acknowledge that the physician's fee schedule applied Or offered to accept... The full amount of the physician's fee schedule... As payment in full of their bill And... Let me ask you this... What's... The... Standard of review here... On the trial court's... Decision not to award... The physician's fees? Your Honor... As we know from our brief... The... The standard on review is abuse of discretion And... The... The trial judge here... We argue... Well, let me ask you this... And I understand that seems... That there's a lot of support for that position... But... What other provision of a contract... In what other area of contract law... Does a trial judge have discretion... To... Enforce that section of a contract... Or not enforce that? Well, we're talking... The physician's bill is basically... A contract, right? With the... Relationship... There's a contractual relationship... Correct... There's... In this case, there's attorney fees provision... Which is a contractual provision... In what other area of contract law... Does a trial judge have discretion... To enforce or not enforce... A con... You know, any provision of a contract? In... In general... Forgive my... My... Infamiliarity with contract law... But... But... It seems in general... That... That... The court would... Would elect not to... Enforce a contract... That it deemed to be... Manifestly unreasonable...   If the... The court did... Enforce it... And I believe here... That... That... That... That... That... That... That... That... I think that here... That's exactly what the... The reasoning of the trial court was... You know, his specific words... On the... On this point, your honor, were that... I don't believe any... Any suit would have been necessary... If you hadn't demanded $11,000... Okay, well, and... And but... In reality, isn't that a factual finding? And so he's finding... In reality, in that case... The judge is finding that... You didn't... By the terms of the contract... You didn't have to get a lower price... Because... Because of your unreasonableness... And overreaching... Is basically what the judge said... And that's a finding of fact by the judge... Which... It seems to me... That the standard of review... Ought to be... Manifest way to the evidence... Exactly... And not abuse of discretion... Listen... Well... Manifest way... Manifest way to the evidence... On a factual finding... Of course, your honor... And... Well... Consider... What... Manifest way to the evidence would be... From the Supreme Court a hundred years ago... We have... Anything that's more than a mere scintilla... Of evidence... Is adequate... For... The court to make such a finding... Or for the court's finding... In a factual matter to be sustained... And... We would respectfully request that... That this court... Acknowledge that... The trial court did have... A mere scintilla of evidence... And... Should be sustained in its factual finding... And I don't mean to be picking on you... When I'm saying that... We're going through all this stuff for this case... I find the case law to be very confusing... And... And... Because of this... Constant use by the courts... Of abuse of discretion standard... On an even contractual... Attorney's fees... And so on... I have some trouble with it... But... Well, it's a point well taken, your honor... And... And... It's... A flaw in our argument... And... Raised it... As you point out... That... Certainly... The... You don't get to the abuse of discretion... Without the factual finding... Which the trial court clearly made... But... Even when... Taken into consideration... We submit that the... The trial court certainly... Had evidence to hang his head on... If you will... That fully supports his finding... It was not... You know... It was not out of left field... It was not out of thin air... What we have here basically... Is a situation... It seems to me... And correct me if I'm wrong... That we have the trial court saying that... The physicians are... Ought... Are entitled to... Eight thousand and some dollars... Correct? Yes, your honor... And all... How else were they going to get that... Eight thousand and some dollars... Without contracting with an attorney to collect it? They could have agreed to accept it, your honor... Accept it? That you were only offering six thousand? I mean... How were they going to get... How could... When were they ever offered... Eight thousand dollars? Counsel, that's two minutes... It was offered... The amount was offered by letter... Dated October of two thousand... Nine, I believe... We couldn't... We transmitted... Before we settled... The workers' compensation case, your honor... We transmitted... Our intent to settle... To advanced physicians... Because we knew they had an open invoice... And we sent them... A copy of their invoices... And annotated with the physician's fee schedule... They refused to look at those invoices... The head of advanced physicians... The owner, Dr. Vallandigham... I spoke with personally on the telephone... And his daughter... Is his bookkeeper... And he... She told him that he was entitled to eleven thousand dollars... Ten thousand, nine hundred and some... So he refused to look at the documents... He never looked at the documents... His prior counsel... Jason Marker... Told me that he never looked at the documents... He trusted his daughter... We could never come to an agreement... We told him... Before we settled the case... Exactly what the... Physician's fee schedule amount of these bills was... It was denied from the beginning... We never had... A meeting of the minds, if you will... I don't believe that it was necessary for them to file a lawsuit... Because we could never have any discussion... Because they would never acknowledge... One, that the physician's fee schedule applied to the bills... Which clearly it does... And two, that the amount owed under the physician's fee schedule was... Eight thousand, three hundred and fifteen dollars and ninety-four cents... Counsel's time... I have a question... Please... It relates to Justice Schmidt's question about standard of review... It's my understanding that the trial court found the contract provision did exist... Requiring the payment of attorney's fees... He didn't void that provision... He said it exists and it's enforceable... He did, your honor... But he found that the fees in this case would not be awarded... Because they were unreasonable based on the conduct leading up to litigation... I believe that's a fair interpretation, your honor... The fees were four thousand dollars for an eight thousand dollar dispute... That's my understanding, your honor... Did the court address the amount of fees? If I may, your honor... It was... I can only give you my impression... Because your honors have the words of the court... It was my impression that the court was disgusted by it... And as you have the transcript... His words were that he... Because Mr. Cayley demanded to know why fees weren't going to be awarded... And the judge's only explanation was that he believed that their demand... That they be paid nearly eleven thousand dollars was the only reason that suit was filed... Well... But let me ask you this... Wasn't there evidence also that your position was... The twenty percent... Common fund doctrine claim... Which also turns out to be an unsound legal demand... He didn't buy that either... So we've got... Notice we've got two parties here... Neither one of them are, you know... Come to terms on what turns out to be the amount the court finds is owed... We don't have one party saying... Yeah, we'll pay that amount... And the other party not accepting that... We've got... According to the ultimate findings of the court... The plaintiff's asking for more than he gets... And in this case, the defendant, your client, is offering less... So... Which, of course, is the birth of virtually every lawsuit... In the state and out in the country... So... I mean... That is the genesis of contract lawsuits, I suppose, in general... Especially given the context from which this arises, your honors... I believe that it would... To permit a service provider who refused to engage in any reasonable discourse over their bills... Or acknowledge that the state statutes apply to reduction of their bills... To reward them by awarding $4,000 or $5,000 in attorney's fees... When the entire bill is, you know, only $8,300... Would seem to be about as far a miscarriage of justice as possible... Well, sometimes it costs, you know, $1,000 to do repair... You know, to install a $100 part on a car that's been damaged... And sometimes the labor to get where... You know, to get over this dispute is just kind of the way it is... I mean... If you've got a $100 dispute, what lawyer is going to represent you? But you want your $100, you've got to go hire a lawyer that may cost you... Three times... Multiple times what you're looking to get... So... Was the trial court provided with an itemization of how those fees arose? Beg your pardon, Your Honor? Was the court given an itemized statement of how those fees arose or was it just a demand? By Ms. Clifton? Ms. Clifton provided by fax on or about August 8th of 2008, Your Honor... An itemized... The attorney's fees requested... $4,000 in fees arose... I have never seen an itemized billing statement of the $4,000, Your Honor. And I do not believe it was ever tendered to the court. So there was no evidence requesting that? Or proving to support the amount of fees? I can't state whether it was tendered to the court, Your Honor. I have not seen it. Thank you. Thank you. Thank you, Your Honors. All right. Thank you, Mr. Candiano. Thank you, Your Honor. Mr. Casinos, rebuttal? Your Honors, you are right on point on your analysis of the dispute here. When you made your comments on workers' compensation, not allowing for a common fund doctrine, and only sublocation on insurance payments, and on your analysis that the $8,135 was never really offered, it was only $6,000. And as you can see, you had, in a negotiation, you had two starting points. You had the $10,000 starting point that the advance positions had, and you had the $6,000 that Mr. Candiano and Ms. Clifton had. And it would have been reasonable to reach a medium, which is the $8,135 that the arbitration awarded and that the court awarded. But the reality is that Mr. Candiano and Ms. Clifton never did that offer. What was the amount of fees at that point in time, attorney's fees? The amount of attorney's fees at the arbitration hearing was $1,888. So it was much smaller then. It's just, it's being allowed to snowball. And then we're here, and, you know, there are more attorney's fees involved. Well, in the trial court, there never got to a reasonable, you know, you never got to the stage of the trial court going through the, getting to a reasonableness hearing on the amount of the fees. Is that fair to say? I agree. They never even got there in the trial court. Yes, sir, I agree. And if you really look at the trial court transcript, it seemed hurried. When I first read it, it seemed hurried. I mean, hurried. You know, the arguments were not being taken. And when Mr. Keeley tried to offer an argument for attorney's fees, you know, it was not taken. You know, it was like he could not talk about it at that point. In Willis County? They were rushed? Yes, ma'am. And I think that's part of the problem, that the process, the analysis wasn't followed completely there. And that's why we're here. And if the arbitration agreement would have been accepted or offered at $8,135 with those attorney's fees, you know, the probability is that it would have been accepted, but it was never accepted. And the bone that kept being stuck in the neck of the physician's company was this request for an extra $20,000, I mean 20%, which it doesn't, you know, the workers' compact doesn't allow for that provision. I never seen it. And it's only in segregation cases of insurance companies. And, you know, also I said the only issue in appeal was, you know, the abuse of discretion allowing attorney fees. But, you know, we have to remember that at the time that this case was being seen, the law in Illinois, the Supreme Court, was that the fund doctrine did not apply to physician's fees under a lien or contractual basis like that. And it was a Maynard case. And then Howell was only recently and then the Supreme Court make a decision that, no, you know, Maynard still prevails and we won't allow common fund doctrine. And I think that pushing for that discount is really what interfered in what would have been a reasonable negotiation. And, unfortunately, we're here. And that's why, you know, for all these reasons, that's why we request the court to reverse and allow for the fees as the contracts face. Because the Negroness case is very clear in that its intentions are clear, the language is clear. It is good policy to abide people by the contract they sign. Otherwise, we're going to be signing contracts and allowing litigation and overburdening the judicial system. But do you agree with the court, even though the contract provides for fees, the court still has discretion to determine the reasonableness of those fees and what they may or may not be? I agree, Your Honor. Oh, okay. Yes. You know, that will be something once the court, you know, agrees that the contract is solid, that it's theorem ambiguous and fees will be allowed, then, of course, the judge will have time to review the fees and exercise discretion there. I don't think that advance decisions or any attorney will make banking demands like that from the court. But if I read your brief correctly, you're asking for us to direct the court to order fees in the amount you requested plus- To reverse- The fees for today. You're correct. But you would be satisfied if it was remanded for the court to conduct a hearing on the reasonableness of fees in the trial court and those here on appeal? That's correct. Sorry. Good news for a new associate in bank. Counsel has one minute. Sure. And, you know, any statements about conversations that he may or may not have, you know, is strictly hearsay about what was offered. What we have on the record is that, you know, the offer was $6,000, never $8,135. And, of course, you realize that also the case law also allows for additional fees if we have to keep coming to court and trying to get the $8,000. And Montgomery Ward's court clearly stated that, that if you have to keep doing appearances and more complaints to get your initial fees, then that allows for attorney's fees also. And in fairness to the trial judge, he did tell everybody in the courtroom he had to go to cover somebody else's call. I mean, it wasn't like he was going to go call clean that day. They were busy. He was doubled up. That's correct. That's not a reflection on the trial judge at all. You know, he did have a busy schedule, and somehow he got into his case. Yes. All right. By the way, where did you go to law school? NIU. Okay. Go back to your office, call your dad, professor, or whoever, and tell them that you did a very fine job. Thank you, sir. And not to denigrate it all. So win, lose, or draw, you did a great job. And so I'm not cutting off your head. Are you a lawyer? One of you was more comfortable up here than the other. That's all we're observing. Anyway. All right. This matter. I misspoke in something that's come to me. May I just have 60 seconds? Sure. Thank you. I don't recall which justice asked me. I believe it was Your Honor who asked, when exactly did you ever offer the $8,315? That, at the time of, I don't recall the date, Your Honor, but at the time of the arbitration, that amount was specifically offered in full to prior counsel, Mr. Jason Marker. And I would also add that at arbitration, the only reason that the arbitrators awarded any attorney fees at all was that Mr. Marker made a misrepresentation to the court that he didn't receive correspondence offering the monies at some time prior, which he denied once we left the courtroom. He said he didn't deny having received it. But one way or the other, on the date of arbitration, we specifically made a firm offer for, to pay the full amount of the attorney fees, Your Honor. And is that in the record somewhere? I beg your pardon? Was that information that you just advised us, can we find this in the record somewhere? There was no record of the arbitration proceedings. Any correspondence going back and forth that may have been attached as exhibits to anything? There are emails back and forth between myself and Mr. Marker, which I could provide to the court. But I'm saying in the record below. No, Your Honor. Okay. Because it wasn't considered prior to today. All right. All right. Thank you, sir. All right. Thank you both for your arguments here today. The matter will be taken under advisement.